J-S22023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVON RENEE HAYES | : | |
| | : | |
| Appellant | : | No. 918 WDA 2022 |

Appeal from the PCRA Order Entered July 13, 2022
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0014894-2003

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVON RENEE HAYES | : | |
| | : | |
| Appellant | : | No. 919 WDA 2022 |

Appeal from the PCRA Order Entered July 13, 2022
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0001018-2004

BEFORE: OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY STABILE, J.: **FILED: September 28, 2023**

Appellant, Davon Renee Hayes, appeals from the July 13, 2022 order entered in the Court of Common Pleas of Allegheny County, denying his fifth petition for collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Upon review, we affirm.

As this Court explained in a memorandum affirming dismissal of Appellant's third PCRA petition:

> Appellant confessed to being one of three persons who robbed a store in the East Liberty neighborhood of Pittsburgh on October 9, 2003. William Anderson, a clerk at the store, was shot to death during the robbery. Greg Herring and Victor Starr were Appellant's co-conspirators. Following a bench trial, Appellant was convicted of second degree murder, robbery, and conspiracy. On May 23, 2005, Appellant was sentenced to life in prison for the murder conviction and a concurrent sentence of five to ten years' imprisonment on the robbery conviction. No additional sentence was imposed on the conspiracy conviction.

*Commonwealth v. Hayes*, No. 1919 WDA 2016, unpublished memorandum (Pa. Super. filed November 9, 2017).[1]

On direct appeal, this Court affirmed Appellant's judgment of sentence. Upon review of a petition for allowance of appeal, our Supreme Court remanded with direction for this Court to consider whether Appellant's confession should have been suppressed. On remand, we affirmed the judgment of sentence and, on April 9, 2008, our Supreme Court denied the subsequent petition for allowance of appeal. Appellant did not seek a writ of

---

[1] In a footnote to the memorandum, the Court explained that additional details regarding the factual background and procedural history of the case were provided in *Commonwealth v. Hayes*, No. 1094 WDA 2005, unpublished memorandum (Pa. Super. filed October 30, 2007) (direct appeal); *Commonwealth v. Hayes*, No. 1794 WDA 2009, unpublished memorandum (Pa. Super. filed October 13, 2010) (first PCRA petition); and *Commonwealth v. Hayes*, No. 1025 WDA 2011, unpublished memorandum (Pa. Super. filed July 10, 2012) (second PCRA petition). *Id.* at 1 n.1.

certiorari to the United States Supreme Court. Therefore, his judgment of sentence became final 90 days later, on July 8, 2008. *See* U.S.Sup.Ct.R. 13.1.

On January 21, 2009, Appellant filed a timely *pro se* PCRA petition, asserting approximately 50 errors committed by the trial court and allegedly ineffective trial and appellate counsel.[2] Counsel was appointed and filed a *Turner/Finley*[3] no-merit letter, addressing each of the assertions raised in the petition. The PCRA court granted counsel's application to withdraw and dismissed Appellant's petition without a hearing on October 2, 2009. On October 13, 2010, we affirmed the dismissal.

On April 11, 2011, Appellant filed a second PCRA petition. Among the claims in that petition was an assertion of trial counsel ineffectiveness for failing to call alibi witnesses, including Miracle Smith and Princess Murphy. Second PCRA Petition, 4/11/11, at ¶¶ 23-30. On June 2, 2011, the PCRA court dismissed Appellant's petition. On July 10, 2012, we affirmed the dismissal.

On October 7, 2016, Appellant filed a third PCRA petition, which the PCRA court denied on November 16, 2016. On appeal, this Court affirmed. *See Commonwealth v. Hayes*, No. 1919 WDA 2016, unpublished

---

[2] Included in the claims was an assertion that trial counsel was ineffective for failing to call Appellant's alibi witnesses. *See* Pro Se Petition, 1/21/09, Part C, at 3 ¶ D (unnumbered).

[3] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988).

memorandum (Pa. Super. filed November 9, 2017). On September 5, 2018, our Supreme Court denied his petition for allowance of appeal.

In our dismissal of Appellant's third petition, we explained that the petition was facially untimely and we rejected Appellant's argument that his untimely petition was saved by the newly-discovered fact exception relating to statements from Darnell Clark and Richard Peterson and an affidavit from Antoine Lester. Both Clark and Peterson testified at the 2006 trial of Appellant's co-conspirator Greg Herring, without implicating Appellant.[4] In his affidavit, Lester represented that he was standing next to Darnell Clark a few hours after the murder when Clark identified Herring and Starr to a detective as suspects and said Appellant was not one of the suspects.

While the appeal from dismissal of the third PCRA petition was pending before this Court, Appellant filed a motion to file newly-discovered evidence relating to a May 2017 affidavit signed by Darnell Clark. The PCRA court dismissed the petition on September 28, 2017 and Appellant filed an appeal to this Court on October 18, 2017. On October 25, 2018, we affirmed, noting that the motion, which the PCRA court treated as a fourth PCRA, was a legal nullity in light of the pending appeal from the dismissal of Appellant's third PCRA petition. The Court advised Appellant that he had 60 days from

---

[4] A jury convicted Herring of second-degree murder and he was sentenced to life in prison without the possibility of parole. The individual identified as Starr was never charged or brought to trial.

- 4 -

September 5, 2018—the date the Supreme Court denied his petition for allowance of appeal involving the third PCRA petition—to file another PCRA petition relating to the Clark affidavit. **Commonwealth v. Hayes**, 1617 WDA 2017, unpublished memorandum (Pa. Super. filed October 25, 2018).

On November 7, 2018, Appellant filed the instant *pro se* PCRA petition, his fifth, asserting that the Clark affidavit was after-discovered evidence and qualified as an exception to the PCRA's timeliness requirements.[5] In addition, Appellant asserted **Brady** claims, also with respect to the Clark affidavit, in support of a governmental interference exception to the timeliness requirements. On November 28, 2018, counsel entered an appearance on Appellant's behalf. After several extensions were granted, on July 31, 2020, counsel filed an amended 55-page PCRA petition to which eight exhibits, spanning an additional 36 pages, were attached.

By order entered August 10, 2020, the PCRA court directed the Commonwealth to file a response. After Appellant filed a motion to amend the amended PCRA petition to include an additional affidavit, the Commonwealth sought and obtained extensions before filing its response on March 15, 2021. Appellant's counsel sought the opportunity to reply to the

---

[5] Although the deadline for filing the petition was November 4, 2018, Appellant's *pro se* petition included a certification that Appellant placed his petition in the hands of prison personnel on November 1, 2018. In accordance with the prisoner mailbox rule, the petition was accepted as filed in accordance with this Court's October 25, 2018 directive.

Commonwealth's response. Counsel also sought an additional amendment to the petition to include another witness statement. On June 10, 2021, the Commonwealth filed its response to which Appellant's counsel filed a reply on July 12, 2021.

On March 25, 2022, Appellant's counsel requested a status hearing. Because the trial judge, who also presided over the earlier PCRA petitions, passed away in October 2020, the case was reassigned to the Honorable Elliot C. Howsie, who scheduled and then conducted the status hearing on April 20, 2022.

At the conclusion of the hearing, the PCRA court issued a Rule 907 Notice of its intent to dismiss the petition as untimely. Appellant did not file a response. On July 13, 2022, the trial court entered an order dismissing the petition. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises six issues for our consideration:

I.     Whether [Appellant's] PCRA petition was timely?

II.    Whether the Commonwealth's failure to disclose exculpatory information violated [Appellant's] due process right and requires a new trial?

III.   Whether the after-discovered evidence warrants a new trial under 42 Pa.C.S. § 9543(a)(2)(vi)?

IV.   Whether the United States and Pennsylvania constitutions prohibit the incarceration of one who is actually innocent?

V. Whether [Appellant's] claim of actual innocence should serve as a gateway to review for any PCRA claims deemed procedurally barred?

VI. Whether the issues raised were previously litigated?

Appellant's Brief at 4.

On appeal,

[w]e review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. ***Commonwealth v. Burkett***, 5 A.3d 1260, 1267 (Pa. Super. 2010). This review is limited to the findings of the PCRA court and the evidence of record. ***Id***. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. ***Id.*** This Court may affirm a PCRA court's decision on any grounds if the record supports it. ***Id.*** We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. ***Commonwealth v. Carter***, 21 A.3d 680, 682 (Pa. Super. 2011). However, we afford no such deference to its legal conclusions. ***Commonwealth v. Paddy***, 15 A.3d 431, 442 (Pa. 2011); ***Commonwealth v. Reaves***, 923 A.2d 1119, 1124 (Pa. 2007). Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Colavita***, 993 A.2d 874, 886 (Pa. 2010).

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012).

In his first issue as phrased, Appellant simply asks whether his petition was timely. All PCRA petitions, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final," unless an exception to timeliness applies. 42 Pa.C.S.A. § 9545(b)(1).[6] "The PCRA's

---

[6] The one-year time limitation can be overcome if a petitioner (1) alleges and proves one of the three exceptions set forth in Section 9545(b)(1)(i)-(iii) of the PCRA, and (2) files a petition raising this exception within one year of the date the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2).

time restrictions are jurisdictional in nature. Thus, if a PCRA petition is untimely, neither this Court nor the [PCRA] court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claims." ***Commonwealth v. (Frank) Chester***, 895 A.2d 520, 522 (Pa. 2006) (internal citations and quotation marks omitted) (overruled on other grounds by ***Commonwealth v. Small***, 238 A.3d 1267 (Pa. 2020)). If a petition is not timely, we cannot address the substantive claims raised in the petition. ***Commonwealth v. Stokes***, 959 A.2d 306, 310 (Pa. 2008).

As noted above, Appellant's judgment of sentence became final for purposes of the PCRA on July 8, 2008. Appellant had one year to file a timely PCRA petition (*i.e.*, July 8, 2009). The underlying petition was filed on November 7, 2018, more than ten years after his judgment of sentence became final. The trial court correctly determined that Appellant's petition was untimely on its face. We agree. Therefore, unless Appellant has established an exception to the PCRA's time bar, we lack jurisdiction to consider the merits of his claims.

In his second and third issues, Appellant asks us to consider whether he has satisfied either the governmental interference exception set forth in 42 Pa.C.S.A. § 9545(b)(1)(i) or the after-discovered evidence exception to the PCRA's timeliness requirements set forth in 42 Pa.C.S.A. § 9545(b)(1)(ii).

With regard to the governmental interference exception, Appellant asserts that the Commonwealth committed a **Brady**[7] violation by withholding exculpatory information. Specifically, Appellant contends the Commonwealth failed to disclose (a) Darnell Clark's statement to police that Appellant was not one of three men Clark saw near the crime scene on the day of the murder; (b) Clark's reluctance to testify against Appellant at Appellant's trial; and (c) statements made to police by Richard Peterson and Miracle Smith about their separate encounters with Appellant's co-conspirators on the day of the shooting. Appellant contends that these witness accounts prove he was not involved in the shooting death of William Anderson.

As our Supreme Court explained in **Commonwealth v. Spotz**, 47 A.3d 63 (Pa. 2012):

> To establish a **Brady** violation, an appellant must prove three elements: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. **Commonwealth v. Lambert**, 584 Pa. 461, 884 A.2d 848, 854 (2005). We stress that the burden rests with the appellant to "prove, by reference to the record, that evidence was withheld or suppressed by the prosecution." **Commonwealth v. Porter**, 556 Pa. 301, 728 A.2d 890, 898 (Pa. 1999). The evidence at issue must have been "material evidence that deprived the defendant of a fair trial." **Commonwealth v. Johnson**, 572 Pa. 283, 815 A.2d 563, 573 (2002).

---

[7] **Brady v. Maryland**, 373 U.S. 83 (1963) (holding that a due process violation occurs when the state suppresses or fails to disclose material exculpatory evidence).

*Id.* at 84. As the PCRA court recognized, "Under the PCRA, a defendant must demonstrate that the *Brady* violation 'so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'" PCRA Court Opinion, 11/23/22, at 7 (quoting *Commonwealth v. Cam Ly*, 980 A.2d 61, 76 (Pa. 2009)).

The PCRA court determined Appellant "cannot establish that the alleged failure to disclose Darnell Clark's statement regarding the Auburn Park 'show up' violated the *Brady* rule." *Id.*[8] The court adopted this Court's assessment of the evidence as stated in our rejection of Appellant's third PCRA petition where we held that "Clark's failure to identify Appellant as being implicated in the shooting was known to Appellant since October 9, 2003." *Commonwealth v. Hayes*, No. 1919 WDA 2016, unpublished memorandum at 6 (Pa. Super. filed November 9, 2017). The PCRA court further explained:

> Additional evidence supports the conclusion that [Appellant] knew about the Auburn Park "show up" at the time of trial. Attached to [Appellant's] first PCRA Petition is the October 28, 2004[] letter from trial counsel[.] The letter states, "I believe you know that I have already spoken to Johanna and Chad Collins and Princess Murphy, and they have all given me valuable information." Presently, [counsel for the Commonwealth] certifies that Princess Murphy "will testify about events on October 9, 2003, including time spent with Davon Hayes and what she observed during the show-up involving Darnell Clark." Also, this is the same testimony that counsel certifies will be presented from Darnell Clark and

---

[8] The "show up" refers to the police arrival at Auburn Park on the day of the shooting, at which time Appellant contends Clark identified Herring and Starr as persons he saw near the scene of the shooting, while not identifying Appellant. Again, Clark was not an eyewitness to the shooting but rather indicated he observed Herring and Starr in the vicinity of the shooting.

- 10 -

Miracle Smith. The record is clear. [Appellant] knew about the Auburn Park "show up" at the time of trial. There is no **Brady** violation when the petitioner knew about the evidence in question. **Commonwealth v. Spotz**, 896 A.2d 1191, 1248 (Pa. 200[6]).

**Id.** at 7-8.

The PCRA court also determined that Appellant could not establish a

**Brady** claim with respect to the Peterson statement. The court explained:

Richard Peterson gave a statement to police summarizing an encounter with Greg Herring and Victor Starr at his house on the afternoon of the shooting. Mr. Peterson recalled that the men were sweating and breathing heavily. He reported to investigators that Greg Herring said that Victor Starr shot the store clerk.

It is not clear that Mr. Peterson's statement amounts to **Brady** material. At trial, Detective Logan testified regarding [Appellant's] statement. Detective Logan explained that [Appellant] did not shoot the victim. [(N.T., Trial, 2/28/05, at 131)]. The following summarizes what transpired after the shooting:

When they run out of the store together, they stay together for a period of time and then they split up. [Appellant] said he went to an abandoned apartment over by Omega Street, and he stayed there for what seemed like three or four hours. After things calmed down, he later went back out and met with the two defendants again.

**Id.** at 132. Mr. Peterson was not an eyewitness to the shooting.[9] His statement only recalls meeting Mr. Herring and Mr. Starr after the incident. Mr. Peterson's statement is not exculpatory. The statement could hardly serve as a basis for impeachment because it is consistent with the trial testimony regarding who fired the shots and what happened after the shooting.

**Id.** at 8.

---

[9] None of the individuals who offered statements forming the basis of Appellant's **Brady** claim witnessed the murder. Each offered an account of events at locations other than the actual site of the murder.

We find no error in the PCRA court's analysis. Further, as the court observed, Appellant could not show prejudice resulting from the absence of Peterson's statement. Peterson's statement was consistent with the statement Appellant gave to Detective Logan. Therefore, the absence of Peterson's statement does not raise any questions as to the reliability of the guilty verdict. *Id.* at 8-9. Because Appellant has failed to establish governmental interference with respect to any of the statements in question, Appellant has not satisfied the governmental inference exception to the PCRA's time bar. Appellant's second issue lacks merit.

In his third issue, Appellant contends he can avoid the PCRA's time bar in light of newly-discovered evidence. The newly-discovered fact exception requires a petitioner to plead and prove two components: (1) the facts upon which the claim was predicated were unknown, and (2) these unknown facts could not have been ascertained by the exercise of due diligence. *See Commonwealth v. Burton*, 158 A.3d 618, 638 (Pa. 2017).

The PCRA court noted Appellant's continuing insistence that the Auburn Park "show up" and the lack of identification that occurred at that time were unknown to him and could not have been discovered prior to 2016 when Appellant reviewed the transcripts from the trial of his co-conspirator Herring. However, the court concludes, "the Auburn Park 'show up' was known to [Appellant] and his counsel at the time of trial." PCRA Court Opinion, 11/23/22, at 9.

The PCRA court observed that Appellant previously argued, in his third PCRA petition, that the statements from Clark and Peterson, as well as an affidavit from Antoine Lester, were previously unknown to him. The court indicated that this Court rejected Appellant's assertions at that time, concluding that Appellant knew about the "show up" prior to his trial. "Finally, and as importantly, Clark's failure to identify Appellant as being implicated in the shooting was known to Appellant since October 9, 2003." *Id.* at 9 (quoting *Commonwealth v. Hayes*, No. 1919 WDA 2016, unpublished memorandum at 6 (Pa. Super. filed November 9, 2017)). As for the Lester affidavit, "Appellant and Lester were socializing at Auburn Park just before their interaction with the police following the shooting. . . . More importantly, the affidavit shows Appellant was present at the time Clark told the officers Appellant was not involved in the shooting. It is unclear why Appellant did not pursue this avenue any time sooner." *Id.* The PCRA court concluded, "It is clear that the Appellate Court has previously found that the facts of the Auburn Park 'show up' were known by [Appellant] as early as October 9, 2003." *Id.*

The PCRA court addressed Appellant's assertion that this Court, in affirming dismissal of Appellant's third PCRA petition, "focused on the availability of the Herring transcripts in assessing whether [Appellant] had demonstrated" a claim based on newly-discovered evidence. *Id.* at 10 (quoting Appellant's Amended Fifth PCRA Petition, 7/31/20, at 23 n.8). The

court rejected Appellant's assertion, finding that "[i]n this court's estimation, it is [Appellant] who has been so focused on trial transcripts and affidavits from his associates that he has missed the important holding that his presence in the park leads to the conclusion that the show up was known at the time of trial." *Id.* at 9-10.

We find no error in the PCRA court's conclusion that Appellant has failed to satisfy the newly-discovered evidence exception to the PCRA's time bar. Appellant's third issue fails.

Appellant's fourth and fifth issues question whether the United States or Pennsylvania constitutions prohibit incarcerating a person who is actually innocent and whether Appellant's claim of actual innocence should serve as a "gateway" to review of PCRA claims that are time-barred. These issues are related to, and stem from, two federal *habeas corpus* proceedings pursued by Appellant. In his habeas petition filed on February 10, 2017, Appellant challenged his conviction for the second time and sought authorization to file a second or successive petition in the Third Circuit Court of Appeals. As Appellant relates,

> On March 20, 2018, the Court of Appeals granted [Appellant's] application, finding he "made a *prima facie* showing that his proposed habeas petition relies on newly-discovered evidence that, if proven to be true, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty of his underlying offenses."

- 14 -

Appellant's Brief at 34-35 (quoting *Hayes v. Tice*, No. 2:17-cr-00198 at 8, Doc. No. 8 (W.D. Pa.)). Therefore, the petition was transferred to the district court where it was filed on March 20, 2018. The attorneys representing Appellant in the instant appeal were appointed but the federal proceedings were stayed pending this Court's disposition of Appellant's appeal from dismissal of his fourth PCRA petition. Following that disposition, Appellant's counsel were admitted *pro hac vice* and filed Appellant's amended fifth PCRA petition. At the April 20, 2022 status hearing conducted on the fifth petition, the PCRA court intimated that Appellant's PCRA claims were likely time-barred and suggested that Appellant "take [his] shot at federal court." N.T., Status Hearing, 4/20/22, at 14.[10]

With regard to Appellant's assertions relating to incarceration of the innocent and promoting innocence as a "gateway" to PCRA review, Appellant cites *McQuiggin v. Perkins*, 569 U.S. 383 (2013). In *McQuiggin*, the United States Supreme Court noted that the Court "ha[s] not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *Id.* at 392 (citing *Herrera v. Collins*, 506 U.S. 390, 404-

---

[10] As Appellant notes, he twice moved to reopen the federal habeas proceedings but was met with opposition from the Commonwealth on the grounds he had not yet exhausted his state court remedies. Appellant's Brief at 36 n.11.

405 (1993)). However, based on various decisions by that Court, the Court acknowledged that "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief." *Id.* Quoting *Herrera*, the Court noted, "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* (quoting *Herrera*, 506 U.S. at 404).

Despite Appellant's suggestion to the contrary, *McQuiggin* does not provide a basis for relief. As this Court recognized in *Commonwealth v. Brown*, 143 A.3d 418 (Pa. Super. 2016), "Our jurisprudence, however, has already deemed such decisions [as *McQuiggin* and *Martinez v. Ryan*, 566 U.S. 1 (2012)] pertaining to federal *habeas corpus* law irrelevant to our construction of timeliness provisions set forth in the PCRA." *Id.* at 420-21 (citing *Commonwealth v. Saunders*, 60 A.3d 162, 165 (Pa. Super. 2013)). Appellant's fourth and fifth issues fail.

In his six and final issue, Appellant challenges the PCRA court's determination that the issues raised in his fifth PCRA petition were previously litigated. *See* PCRA Court Opinion, 11/23/22, at 4-5. As reflected above, and as recognized by the PCRA court, Appellant's claims relating to the Clark and Peterson statements, the Lester affidavit, and matters involving the Auburn Park "show up" were addressed and dismissed by this Court in the appeal from

dismissal of Appellant's third PCRA petition. *Id.* at 5. We find no error in this regard. Moreover, to the extent that any of his issues were not previously litigated, Appellant has failed to demonstrate that any exception to the PCRA's time bar applies.

Because the underlying PCRA petition is facially untimely, and because Appellant has failed to prove the applicability of any exception to the PCRA time bar, we shall affirm the order of the PCRA court denying as untimely the Appellant's fifth PCRA petition.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/28/2023